(NOTE:  The following petition was tried before and determined by a special Third Division consisting of CLINE, EKWALL, and MOLLISON, Judges.)

**No. 52909.**—Citrus & Allied Essential Oils Co. *v.* United States, petitions 6610–R, 6611–R, and 6612–R (New York).

MOLLISON, Judge:  These are three petitions filed under the provisions of section 489 of the Tariff Act of 1930 for the remission of additional duties assessed by reason of undervaluation on entry of certain orange oil imported from the Dominican Republic.  The petitions have been consolidated for trial.

At the time of entry of each of the shipments involved the petitioning company was owned by one Charles Pisano and his wife.  Prior to the entry of the United States into the late war the company had been engaged in the importation of essential oils from foreign sources, including Italy, and upon the imminence of our entry into .the conflict, Mr. Pisano sought to find new sources of supply for his business.  He contacted the Department of Agriculture, which suggested the Dominican Republic as a suitable area, and upon investigation by Mr. Pisano he found it to be a very good source for different essential oils, including orange oil, that formerly came from Europe.

According to his testimony, Mr. Pisano did a great deal of pioneering work prior to the shipments here in question, by going down to the Dominican Republic and teaching the native farmers how to gather the oil.  He stated that the oil was an item of commerce and that the farmers freely offered it for sale.  During the period covered by the three shipments in question he said that the price ranged from $1.50 to $1.80 per botella, a container holding about 1⅗ pounds, and that those were the prices his firm paid to the farmers.

Although the foregoing facts, as developed by the record, are common to the three entries in question, the circumstances attending each particular entry are different enough from those in connection with the others to warrant separate discussion.

The first entry in period of time (No. 727083) was that covered by petition 6610–R and was made on November 27, 1941.  It covered what were stated to

be 2 cans of orange oil containing 75 pounds in all, entered at a value of $1.50 per pound, packed. A pro forma invoice was supplied showing the shipper to be one E. F. Rosenbaum of Trujillo, D. R. The oil covered by this entry was subsequently appraised by the appraiser at $3 per pound, packed, and was finally appraised by this court at $2.40 per pound, plus packing.

According to Mr. Pisano's testimony, the oil involved had been a trial shipment by Mr. Rosenbaum; it amounted, in fact, to only 67 pounds, and was of inferior quality. Mr. Pisano stated that he purchased the oil from Mr. Rosenbaum at a price of $1.25 per pound, but had entered it at $1.50 per pound as reflecting the price at which orange oil was being offered at that time in the Dominican Republic. A cancelled check showing payment of $83.75 to E. F. Rosenbaum under date of January 15, 1942, was offered and received in evidence as petitioner's exhibit 1. Also received in evidence as petitioner's collective exhibit 12 was a handwritten letter addressed to the customs examiner who passed the merchandise, signed "E. F. Rosenbaum" under date of February 8, 1942, containing statements to the same effect as those made by Mr. Pisano in his testimony.

Mr. Pisano's testimony with respect to the details of this shipment is vague, confusing, and conflicting, and in some respects at considerable variance with statements found in the official papers. To illustrate: He testified on direct examination as follows:

Q. I direct your attention to the first entry involved in this petition, and show you the invoice and entry papers and ask you if you are familiar with that shipment? Do you remember that transaction?—A. *I did not import this.* This was sent here by Rosenbaum and consigned to his son-in-law but then *I bought the merchandise from his son-in-law.* (R. p. 3.) [Italics added.]

Although Mr. Pisano disclaimed having imported the merchandise, the pro forma invoice, dated November 4, 1941, shows his firm, Citrus & Allied Essential Oils Co., as the consignee. It also contains the statement "Date order 10/14/41," indicating that the shipment was in response to an order of that date. A receipt for a bill of lading found with the papers indicates that one H. W. Blumenthal was the original consignee on the bill of lading, but that at some time, presumably prior to entry, he endorsed the same to the Citrus & Allied Essential Oils Co. The entry was made in the name of Citrus & Allied Essential Oils Co., and the required declaration of consignee is signed in the name of Citrus & Allied Essential Oils Co., and contains statements that the merchandise was imported by it and was "obtained in pursuance of a purchase, or an agreement to purchase."

Although he stated, as above, that he bought the merchandise from Rosenbaum's son-in-law, Mr. Pisano later testified:

Q. And, from whom did you buy it?—A. *I bought it from Rosenbaum.* (R. p. 4.) [Italics added.]

However, on cross-examination he testified as follows:

X Q. You finally did buy the oil from Rosenbaum?—A. *I did not buy the oil from Rosenbaum.* Rosenbaum shipped it here into the States and consigned it to his son-in-law. Then, when he came here, *he came with the oil and offered it to me and I bought it from him and that was a transaction on the desk.* (R. p. 25.) [Italics added.]

The petitioner presents the transaction involving the oil in question as a simple on-the-desk offer and acceptance made more than a month after importation. There is sufficient, however, in the record to indicate either that such was not the case, or at least to call for some explanation on the part of the petitioner if it hoped to succeed in this proceeding. It developed that there was a history of correspondence and an original offer of this merchandise in the Dominican Republic prior to its importation. The pro forma invoice, as has been stated,

bears a notation that the merchandise was ordered under date of October 14, 1941. The consignee's declaration, signed in the name of the petitioner, states that the merchandise was imported by it and "obtained in pursuance of a purchase, or an agreement to purchase." These facts are not in accord with an original on-the-desk offer after importation, and we are of the opinion that it was incumbent upon the petitioner seeking remission to reconcile them with its position, if that was possible.

The second entry here involved, No. 736094, made January 29, 1942, covered by petition 6611–R, involved a shipment of some 420 pounds of orange oil invoiced and entered at $1.60 per pound, packed.

Mr. Pisano testified that he paid $1.60 per botella for the oil, and entered it at $1.60 per pound, the difference covering the expenses of packing, or, as he put it "I figured that I put it down at $1.60 a pound allowing myself about a third of the value for any incidentals which would cover the law." (R. p. 15.) This shipment, like the one covered by petititon 6610–R, was appraised at $3 per pound, packed, and finally appraised by this court at $2.40 per pound, plus packing.

Mr. Pisano testified that he was in the Dominican Republic at the time of the purchase of this oil and made the purchase himself (R. p. 13). He also testified that he paid for it while he was down there (R. p. 37).

It developed that Mr. Pisano had apparently not paid the sellers of the oil directly, but had paid one Carmelo Foti, said to be the agent of the petitioner in the Dominican Republic.

The record with respect to the amount actually paid for this shipment of oil is very confusing. At one point in the record counsel agreed as follows:

Mr. Auster: Counsel have agreed that the entries in the books of the petitioner indicate with respect to each case before the court a credit to Foti, and a corresponding debit to merchandise purchases in an amount in excess of the value of the merchandise shown on each consular invoice. In other words, by illustration, if the consular invoice shows 100 pounds received or shipped at $1.60 a pound, or a total of $160, the books of this petitioner would show a value or a total, rather, strike out value please, would show a total in excess of $160.00.

Mr. Rode: I would like just to amend that. When you say the books, you mean as stated above; the books in that particular. Is that agreeable?

Mr. Auster: Yes. The debit on the credit to Foti and to the merchandise account are in excess of the total invoice price for the merchandise.

What we have just stipulated, we intend to mean all of the other cases which were referred to in the subpoena.

Mr. Rode: Yes.

Mr. Auster: With the exception of—

Mr. Rode: Which did not include the first petition in this case and which does not include the last petition in this case.

Mr. Auster: In other words, the statement that we read into the record refers to the entry in 736094 together with all of the entries mentioned in the subpoena?

Mr. Rode: That's correct.

In other words, counsel was trying to show a course of business or transaction in connection with numerous entries, only one of which was before the court and this statement applies to that course of conduct, including one of the entries in question.

Judge Mollison: Respondent's counsel agrees said statement does not refer to the entries covered by 6610–R and 6612–R?

Mr. Auster: That's right. (R. pp. 128–130.)

At another point in the record counsel for the petitioner called to the stand Paul Hermes, a United States Customs Agent, who had, in the course of an in-

vestigation, examined the books of the petitioning company (which at that point in the record had not been produced) and made copies of such entries. With respect to the shipment under entry 736094 here involved, Mr. Hermes testified that he found—

\* \* \* There was an entry in the journal transferred to the ledger; the merchandise account in the ledger. The entry was made upon 420 pounds at the price of $2.10 totalling $882.00, plus ten per cent commission, plus cost of drums and cases, \* \* \*. (R. p. 60.)

Another item of a gratuity charged against this shipment found by Mr. Hermes was agreed by Government counsel not to be involved.

At still another point in the record, when the books had been brought into court, Mr .Pisano identified the item of commission of $88.20 as referring to the shipment in question. Since it appears that under the agreement between the petitioning company and Foti the latter was to receive "a commission or bonus of ten (10%) per cent on the actual cost of sweet and bitter orange oils and limes hand pressed" it would appear that the commission was paid upon a cost of $882 for the shipment as found by the customs agent. The merchandise was entered at a total value of $672, which, as hereinbefore indicated, was the price Mr. Pisano claimed he paid for it.

Mr. Pisano's explanation of this situation is that the amount charged against the shipment in question was not alone for the oil but for other services and expenses as well, including "all sorts of pioneering work, experimental work, planting, and [laying] the foundation for the present factory that is down there" (R. p. 143). He made no effort, he said, to segregate the payments, but periodically straightened the account with Foti, reported the sums to his bookkeeper, but had no record at the time of trial "because those papers were destroyed."

The third entry involved, No. 749341, made April 28, 1942, covered, among other things, 83¼ pounds of orange oil invoiced and entered at $1.80 per pound, packed. Like the other two shipments, it was appraised at $3 per pound, packed, and finally appraised by this court at $2.40 per pound, plus packing.

It is Mr. Pisano's testimony that he was in the Dominican Republic and bought this oil himself, for which he paid $1.80 per botella to the farmers who brought it to his plant. At this time Mr. Foti was out of the picture, and the petitioner offered nothing to substantiate Mr. Pisano's statement as to the amount paid.

It appears that the 3 shipments here involved were part of a series of some 13 or more shipments of orange oil made to the petitioner. Petitioner's counsel, in the brief filed in its behalf, points out that the previous shipments had been appraised as entered; that in each instance the invoice was submitted to the appraiser for information prior to entry; that no information was supplied by the customs authorities as to market value; that the petitioner was never advised that the entered values were doubtful or other than satisfactory, and that petitioner was never permitted or requested to amend the entered values.

We regard none of these facts as indicating affirmatively the good faith of the petitioner. There is nothing to show that the appraiser had any information bearing on the question of the value of the merchandise at the times the invoices were submitted to him. Furthermore, the furnishing of information upon the submission of invoices, and the granting of the opportunity of amending entries prior to appraisement appear to be matters within the administrative discretion and in themselves import neither good faith on the part of the entrant nor lack of it. So, too, the fact advanced by petitioner's counsel that in every instance a reliable customhouse broker was employed is likewise no affirmative proof of good faith of petitioner.

Petitioner's counsel points out in the brief filed in its behalf that the oil was entered at prices higher than the actual purchase prices claimed to have been paid. The testimony in this regard is that it was so entered in order to take care of the dutiable charges in connection with packing, etc., entering into the value for customs purposes.

The examiner in the appraiser's office who passed the orange oil here in question testified that subsequent importations of orange oil have been appraised on the basis of the prices actually paid to producers in the Dominican Republic, and counsel for the petitioner contends that this was "precisely the same basis as the three shipments at bar were entered." The decision of this court on review of reappraisement proceedings, the value found in which gave rise to the additional duties here sought to be remitted, indicates that the final appraised value was based upon the affidavit, offered by the plaintiff there, petitioner here, of one who based his statements "upon his experience in the orange oil business in buying, selling and producing such oil." Hence, the final appraisement was apparently made upon the basis of the prices actually paid to producers. It appears to be a question of amount, not of basis, that underlies the situation in these cases.

All in all, the petitioner's case boils down to Mr. Pisano's iteration of his belief that the entered values represented the market value of the imported merchandise in the country of exportation. His testimony in this regard is entirely unsupported, and, when viewed in the light of his evasive and uncooperative attitude at the trial, very unconvincing.

The difference between the values at which the merchandise in question was entered and the final appraised values is very substantial, and it seems incredible that one could be engaged over a rather extended period of time, as Mr. Pisano was, in the buying and selling of orange oil without realizing that the prices at which he was entering his merchandise were considerably below the market value thereof.

On the record presented we are unable to find that entry at less value than that found upon final appraisement was without intention to defraud the revenue of the United States, to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise. Judgment will therefore issue denying each of the petitions for remission of additional duties herein.